

**NORTHERN DISTRICT OF TEXAS**
**ENTERED**
**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed March 7, 2007                    United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOWRY FOOD PRODUCTS, INC., § | | |
| § | | |
| Debtor. § | | Case No. 03-33950 HDH-7 |
| § | | |
| JOHN LITZLER, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | | Adversary No. 05-3108 |
| § | | |
| ALTO DAIRY COOPERATIVE, § | | |
| LARRY LEMMENES, DONALD J. § | | |
| DESJARLAIS, HANS HORETSKI, § | | |
| DENNIS KASUBOSKI, RONALD § | | |
| WAGNER and TROY JONES, § | | |
| § | | |
| Defendants. § | | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. The Court makes the following findings

FINDINGS OF FACT AND CONCLUSIONS OF LAW - Page 1

of fact and conclusions of law as to those claims pursuant to Federal Rule of Bankruptcy Procedure 7052:

## PROCEDURAL HISTORY OF ADVERSARY

1.  Alto Dairy Cooperative ("Alto"), defendant, is a Wisconsin association of milk producers with a principal business address in Waupun, Wisconsin.

2.  Lowry Food Products, Inc. ("Lowry"), formerly a Texas corporation doing business in Dallas, Texas, is a Chapter 7 debtor.

3.  John Litzler, Chapter 7 Trustee ("Trustee"), filed this adversary proceeding.

4.  The original adversary proceeding asserted a broad range of both Core and Non-Core claims against Alto, its principals, and the attorneys who had represented Alto.

5.  This Court granted a motion to dismiss and a summary judgment in favor of the attorneys. The primary problem with the adversary proceeding against the attorneys was that they had not represented Lowry.

6.  The Court also dismissed or granted summary judgment in favor of the principals on the Trustee's claims against them. At the time of the hearings in these matters, the Trustee had a substantial amount of time to conduct discovery, but did not offer sufficient summary judgment evidence to establish a question of fact to preclude summary judgment. At trial, the Trustee's attorney hinted that the Trustee now has evidence which would have precluded the summary judgment in favor of the principals. Unfortunately, such evidence was too late.

7.  The Court also granted summary judgment in favor of Alto on many of the Trustee's claims. Largely, that order was based on the Trustee's assertion of claims that did not belong to the estate.

8. At the time of trial, the remaining claims against Alto consisted of breach of contract and breach of a Wisconsin statutory duty.

9. The Trustee's claims against Alto are non-core proceedings relating to a case under Title 11, and this Court's jurisdiction is based on their having, at the least, a conceivable effect on the debtor's estate. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987)

10. The Trustee and Alto have consented to trial of non-core claims, and neither party has filed a motion with the District Court under 28 U.S.C. 157 to withdraw the reference.

## **BREACH OF CONTRACT CLAIMS**

11. Effective September 1, 1998, Alto and Lowry entered into an agreement to form the limited liability company known as Alto/Lowry LLC ("LLC").

12. The LLC Formation Agreement provided that the business would be a member-managed Wisconsin LLC, with Alto and Lowry each having 50% ownership.

13. The LLC Formation Agreement provided that each member would have 50% voting rights equal to ownership. This provision proved to be the source of many problems.

14. The LLC Formation Agreement provided that the LLC was being formed under Wisconsin law and that the Formation Agreement would be governed by the laws of the State of Wisconsin.

15. Because the application of Wisconsin law, as opposed to Texas law, could lead to a different result, the Court must resolve the conflict of law issue. Here, the Court finds that Texas choice of law rules apply. *See Woods-Tucker Leasing Corp. v. Hutcheson-Ingram*, 642 F.2d 744, 748 (5th Cir. 1981). The Court must first determine whether the law of the two jurisdictions differ. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex.1984). In the absence of a true conflict,

there is no need for the court to conduct a choice of law analysis. *Vandeventer v. All Am. Life & Cas. Co.,* 101 S.W.3d 703, 712 (Tex.App.–Fort Worth 2003, no pet.). Here, there is no dispute there is a conflict between the laws of Wisconsin and Texas as they relate to the issues in this case. Texas has adopted the "most significant relationship" approach to choice of law, as detailed in Restatement (Second) of Conflict of Laws. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex.1984). Under a "most significant relationship" analysis, Wisconsin law should apply to all of the Trustee's remaining claims. These claims are that (1) Alto is liable to Lowry's bankruptcy estate for breach of contract in connection with the LLC; and (2) Alto violated legal duties of fairness which are said to have been owed in connection with the LLC and the business.

16. The Formation Agreement states that Lowry and Alto would enter into an Operating Agreement but that the LLC Formation Agreement would control in the event of conflict between the two agreements.

17. Alto and Lowry did enter into an LLC Operating Agreement.

18. The LLC Formation Agreement and the LLC Operating Agreement are the two principal contracts concerning the LLC business venture which are the subject of the Trustee's claims.

19. Under Wisconsin law, the elements of a breach of contract claim are "the existence of a valid contract, a breach and damages resulting from the breach." *Steele v. Pacesetter Motor Cars, Inc.,* 267 Wis.2d 873, 880, 672 N.W.2d 141 (Ct.App.2003).

20. In the LLC Formation Agreement, Alto and Lowry agreed that (1) the business would not have any specified term; (2) neither party would have any obligation to contribute capital; and

(3) that either party could terminate and demand liquidation subject to notice and buy out provisions as follows:

> At any time, either Member may request that the Limited Liability Company be sold or dissolved. In such event, either Member will provide written notice to the other Member and the two (2) Members, Alto and Lowry, will then negotiate for a period not to exceed thirty (30) days to determine whether or not a mutual agreement for sale or liquidation can be arrived at. If the parties have not reached a definitive agreement in writing during said thirty (30) day period, either of the parties may, within the next thirty (30) days, make an irrevocable offer to purchase the entire interest of the Limited Liability Company from the other Member. The Member making such irrevocable offer shall be called the "Offering Party." The Member receiving the offer shall be called the "Receiving Party." The Receiving Party shall then have a period of thirty (30) days within which the Receiving Party may either:
>
> (a) Purchase the interest of the Offering Party on the same terms and conditions as those proposed by the Offering Party; or
>
> (b) The Receiving Party shall agree to sell its interest on the terms proposed by the Offering Party.
>
> The Receiving Party will make this election in writing within this thirty (30) day period.
>
> If neither Member makes the irrevocable offer to the other Member during said thirty (30) day period, then the Members and representatives of the Members shall, unless agreed in writing to the contrary, proceed expeditiously, diligently, and in good faith to liquidate all assets of the Limited Liability Company and pay all obligations of the Limited Liability Company, distributing any remaining surplus equally to the Members.

LLC Formation Agreement, DX 15 at pp. 9-10.

21. The Operating Agreement defined "Dissolution Event" to include "deadlock . . . and inability to obtain capital necessary for the operations . . . [or] cause for dissolution and termination as set forth in the Pre-Filing Agreement."

22. As is usually the case in a business venture, the parties entered the LLC with optimism. However, the business arrangement created under the agreements was not successful.

The operations had many problems, beginning at the construction phase. The equipment had many problems. *See*, Alto Ex. 78. Sales were not as projected. The LLC shipped pizzas in violation of federal regulations. The LLC lost money virtually every month of its operation. The operations manager hired by the LLC did not meet expectations. The LLC accumulated substantial liabilities. The principals of Lowry and Alto had a number of disagreements regarding fundamental issues. Alto advanced substantial sums to the LLC and became quite concerned about its investment, and the LLC's indebtedness to it. Alto gave Lowry a number of notices that if things did not improve, Alto intended to terminate the contract. Due to escalating financial losses, Alto gave Lowry written notice on October 13, 2000, that Alto intended to terminate the LLC. Thereafter, neither Alto or Lowry made or received any irrevocable offer to purchase the other member's interest in the LLC.

23. As to the specific contract obligations, Alto substantially performed this promise subleasing a pizza topping line to the LLC at a reasonable lease rate.

24. Alto agreed, under the LLC Formation Agreement, to provide the LLC with a Project Manager to oversee engineering and installation of the pizza topping production line until such time as the line was functioning in a production capacity. Alto substantially performed its promise by providing its Director of Engineering, Hans Horetski, who served as project manager and supervised the engineering design work and installation of the equipment.

25. Alto agreed under the LLC Formation Agreement to provide consulting services on a reasonable basis relating to manufacturing and technical expertise concerning production. Alto provided such consulting services and substantially performed its promise.

26. Alto agreed to loan money to the LLC for capital needs in such amounts as Alto, in its sole discretion, would determine necessary and Lowry agreed that Alto would be a secured

creditor of the LLC for all amounts loaned to the LLC. Alto provided the LLC with loans and cash totaling approximately $5,039,000. Alto substantially performed its contractual promise.

27. The Trustee claims Lowry was improperly excluded from the management of the LLC. The Trustee's evidence does not establish that Alto materially breached the LLC Operating Agreement or the Formation Agreement by excluding Lowry from management or decision making. In fact, the evidence suggests that the Lowry side of the LLC was in charge of operations, in control of the Dallas operating facility, had substantial contact with the customers of the LLC, had contact with vendors of the LLC, hired the Operations Manager, Troy Jones, and was authorized to issue checks for the LLC in an amount up to $20,000.

28. Alto and Lowry agreed in the LLC Formation Agreement that Alto would be secured for loans to the LLC by creation of a Lock Box that would hold LLC accounts receivables. However, the parties did not perfect that security interest.

29. Lowry agreed that the Lock Box would be kept under the control and direction of Alto and that all LLC accounts receivable would be collected in the lock box.

30. The LLC defaulted on the equipment sublease agreement with Alto by failing to make lease payments and by failing to pay ad valorem tax payments on the leased production line.

31. The LLC and Debtor defaulted on payments owed to Alto for cheese. In the instant bankruptcy case, Alto is listed as a substantial unsecured creditor of Debtor. The documents offered into evidence suggest that the LLC and the Debtor did not pay Alto promptly for cheese sold by Alto.

## **BREACH OF ARBITRATION CLAUSE - NO REAL DAMAGES**

32. Alto commenced various legal actions, and litigated bankruptcy cases in an effort to end the LLC and extract itself from the arrangement. The civil action and the voluntary and involuntary bankruptcies filed subsequent to termination of the LLC sought, in part, injunctive relief to prevent Lowry from continuing to operate the LLC. The contracts between the parties required arbitration of disputes. Alto breached the arbitration clause by seeking such relief in these proceedings.

33. However, such breach occurred well after the parties had reached an impasse, and after Alto had ceased funding, as allowed by the contract. The LLC's operations were essentially over. The Trustee has not shown that breach of the arbitration clause damaged Lowry; and therefore, the Trustee is not entitled to recover from Alto for the breach. *See Hanz Trucking, Inc. v. Harris Bros. Co.*, 29 Wis.2d 254, 268, 138 N.W.2d 238, 246 (1965).

## BREACH OF CONTRACT FOR SECURED LOAN – AGAIN, NO DAMAGE TO LOWRY

34. An area of concern to the Court has been the placing of a lien on assets of the LLC by Alto in exchange for a $5 million line of credit for the LLC. The funds were advanced and used to pay down the LLC's direct debt to Alto in approximately the same amount. Alto guaranteed that debt, and, eventually, was required to repay it.

35. The LLC agreements allowed the LLC to pledge assets to Alto for the LLC's debt to Alto. However, the parties did not perfect that surety interest. Lowry can hardly claim that the subsequent pledge of the assets to the bank was not fair to it. As only a member, Lowry, like Alto, could expect a distribution only after creditors were paid. The substitution of $5 million in debt to Alto to the bank, but guaranteed by Alto, placed Lowry in no worse position.

36. At trial, counsel for the Trustee claimed this transaction was hidden from Lowry. It may not have been approved by Lowry, as required by the contracts, but it was not hidden. The evidence suggests that, in June 2000, Alto notified Lowry of the secured transaction. *See* Alto Ex. 62. Later Alto requested a change in insurance to reflect the bank as a loss payee. *Id.* Correspondence by counsel for Lowry indicates knowledge of the secured loan to the bank, and that Alto had arranged such loan. *See*, Alto Ex. 36. In the undersigned's opinion, the failure to obtain Lowry's signature was a breach of the contract. However, the amounts of indebtedness were the same and Lowry was no worse off. It suffered no damages.

## BREACH OF FAIRNESS DUTIES UNDER THE WISCONSIN LLC ACT

37. Under Wisconsin law, LLC members must not willfully fail to deal fairly in any matters in which a member has a material conflict of interest.

38. The standard set out in the Wisconsin LLC Act is the exclusive standard for duties among LLC by members under Wisconsin law.

39. As mentioned previously, this Court is concerned with the placing of a lien on assets of the LLC by Alto in exchange for a $5 million line of credit for the LLC. The funds were advanced and used to pay down the LLC's direct debt to Alto in approximately the same amount. Alto guaranteed that debt, and, eventually, was required to repay it.

40. The LLC agreements allowed the LLC to pledge assets to Alto for the LLC's debt to Alto. However, the parties did not perfect that surety interest. The second loan to the bank perfected a security interest by the bank equivalent to that allowed in the LLC agreement. Lowry can hardly claim that the subsequent pledge of the assets to the bank was not fair to it. As only a member, Lowry, like Alto, could expect a distribution only after creditors were paid. The substitution of $5 million in debt to Alto to the bank, but guaranteed by Alto, placed Lowry in no worse position.

41. At trial, counsel for the Trustee claimed this transaction was hidden from Lowry. As discussed previously, it may not have been approved by Lowry, as required by the contracts, but it was not hidden.

42. The Trustee has not presented substantial or persuasive evidence of conduct undertaken by Alto which constitutes a violation of the statutory duty.

43. Wisconsin law emphasizes freedom of contract in the conduct of LLC affairs and no action undertaken by Alto consistent with its contractual rights under the Formation and Operating Agreements constitutes a violation of fiduciary duties recognized under the LLC Act.

## THE DAMAGE CALCULATION

44. The fair market value of Lowry Food Products, Inc before and after the LLC venture might be an appropriate measure of contract damage under Wisconsin law. However, the Trustee's expert did not establish the fair market value.

45. Assuming that the Trustee established a breach of contract by Alto in other ways, the Trustee's evidence of damages and causation was not persuasive. The Trustee's expert opined that Debtor was worth $5 million. However, his methodology is not persuasive. Further, his conclusions are in conflict with Debtor's tax returns (*see* Alto Ex. 98), and with historic statements of income for Debtor. In addition, the testimony of Ron Waggoner, CFO of Debtor (Alto Ex. 103), is uncontroverted that, at the time the LLC was formed, Debtor had no available credit. The evidence does not indicate a substantial value for Lowry.

46. The Trustee has produced no credible evidence at trial as to the existence or amount of damages.

## SUMMARY

The LLC was a bad deal from the beginning. The parties were apparently eager to extend the business, and were overly optimistic from the start.  Lowry was eager to enter the transaction because it had no available credit, and Alto could provide capital.  Alto wanted the deal so it would have an outlet for its cheese and could expand its business.  Neither party did much to protect themselves.  Lowry did not even have counsel at the time of the negotiations and execution of the Formation and Operating Agreements.  Alto had counsel, but conducted no real due diligence on Lowry.

The business had problems from the beginning.  The construction was slowed because of landlord problems.  The equipment did not work as desired.  The operations manager did not live up to expectations.  Sales did not come close to forecasts.  The parties did not have defined roles, and when things began to deteriorate, the LLC had no real direction.  Part of the problem, it appears to the Court, was that the operations were in Dallas and Alto is in Wisconsin.  These long distance business deals often lead to problems.

Alto did not follow the contract in all respects.  However, this Court cannot conclude, based on the record before it, that Alto's actions caused damages to Lowry.  Alternatively, the Trustee has the burden of proving his damage claim by a preponderance of the evidence.  His evidence, including his expert's testimony, was not persuasive.

Therefore, judgment will be entered that the Trustee take nothing.

###End of Findings and Conclusions###